**ORIGINAL**

# In the United States Court of Federal Claims

No. 13-978C
(Filed: September 25, 2014)

**FILED**

SEP 2 5 2014

U.S. COURT OF
FEDERAL CLAIMS

* * * * * * * * * * * * * * * * * * * * *

| | |
|---|---|
| LACHANA WILLIAMS and RUPERT WILLIAMS, | |
| *Plaintiffs*, | Contract Disputes Act; Claim; Certification; Contracting Officer's Final Decision; Subject Matter Jurisdiction; GSA Online Auction |
| v. | |
| THE UNITED STATES, | |
| *Defendant*. | |

* * * * * * * * * * * * * * * * * * * * *

*Rupert Williams*, Richmond, CA, and *Lachana Williams*, Pomona Park, FL, *pro se*.

*Antonia Ramos Soares*, Civil Division, Department of Justice, Washington, DC, for defendant.

---

OPINION

---

BRUGGINK, *Judge*.

This case involves a contract between the General Services Administration ("GSA") and *pro se* plaintiffs, Lachana and Rupert Williams, ("the Williamses") for the sale of an airplane. After submitting the winning bid for the airplane on GSA's online auction platform, GSAAuctions.gov, plaintiffs paid for and made arrangements to collect the airplane. When Rupert Williams inspected and took custody of the airplane, he found that it

was missing essential parts and that it could not be flown. Plaintiffs subsequently filed suit in the United States District Court for the Northern District of California, the location of the governmental entities the United States Department of Agriculture ("USDA") and the Fire Department of Kern County, California which had possession of the airplane prior to the Williamses. The District Court found that it had jurisdiction over the Williamses claims against Kern County, but in the interest of justice and pursuant to 28 U.S.C. § 1631 (2012), transferred their claims against the USDA to this court. *Williams v. U.S. Dep't of Agric.*, No. 13-cv-508, 2013 WL 5567486 (N.D. Cal. Oct. 7, 2013). Plaintiffs' case was transferred to the Court of Federal Claims in December of 2013 and we received plaintiffs' amended complaint on April 29, 2014.

In their amended complaint, the Williamses allege that the government intentionally misrepresented the value of the airplane during the auction by failing to disclose its condition and its lack of flight certification. Specifically, plaintiffs argue that it was false to advertise that the aircraft had only 2,900 airframe hours. Also, plaintiffs assert that defendant intentionally mislead them because upon "delivery of said aircraft to Plaintiff(s) the Defendant and their co-owner intentionally gave the Plaintiff(s) a current registration for and [sic] aircraft that was in good standing with the FAA [(Federal Aviation Administration)]," which was not the correct registration. Pls.' Am. Compl. 2. Plaintiffs also allege that defendant "knowingly and willfully removed [m]ajor components from aircraft . . . with the intent to defraud and deprive the Plaintiff(s) of the entire aircraft they purchased." Pls.' Am. Compl. 2. As a remedy, plaintiffs seek $99,230, which is the estimated cost of repairs needed to make the plane airworthy. Additionally, plaintiffs request damages of $65,000 for the cost of storing the aircraft, sales tax, freight charges, and the costs of this lawsuit.

We are currently faced with defendant's motion to dismiss, which challenges our jurisdiction. Specifically, defendant alleges that plaintiffs failed to satisfy the requirements of the Contract Disputes Act[1] ("CDA"), 41 U.S.C. §§ 7101-7109 (2012), which they must do before this court may exercise jurisdiction under 28 U.S.C. § 1491(a)(2) (2012). Defendant's motion

---

[1] "The [Contract Disputes Act] provides for the resolution of contract disputes arising between the government and contractors." *England v. Swanson Grp., Inc.*, 353 F.3d 1375, 1379 (Fed. Cir. 2004).

is fully briefed and we heard oral argument on September 24, 2014. For the reasons explained below, we grant defendant's motion and dismiss plaintiffs' complaint for lack of jurisdiction.

## BACKGROUND[2]

On November 14, 2011, plaintiffs purchased for $16,300 an airplane from the USDA through an online GSA auction. The advertisement on GSA's auction website, GSAAuctions.gov, described the airplane that the Williamses purchased as follows:

> AIRCRAFT, FIXED WING: 1967 ROCKWELL COMMANDER 680 FL(P), ENGINES ARE LYCOMING MODEL 10720 BIB, RIGHT ENGINE HAS 30HRS SINCE OVERHAUL, LEFT ENGINE HAS 1390 SINCE OVERHAUL, AIRFRAME HAS 2900 HOURS,[]N911KC REPAIRS REQUIRED INCLUDING BUT NOT LIMITED TO: PLANE HAS NOT BEEN FLOWN IN OVER FIVE YEARS; RIGHT ENGINE HAS METAL IN OIL. BIDDERS ARE STRONGLY ENCOURAGED TO INSPECT PRIOR TO BIDDING. . . .

Pls.' Resp. A034.[3] Specific information regarding inspection was also given in the advertisement, which provided that "INSPECTION WILL BE THE WEEK OF 10/31/11 BY APPOINTMENT ONLY[.] RECORDS ARE

---

[2] The facts are taken from plaintiffs' complaint and are presumed correct. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). We also draw facts from the documents that the parties attached to their filings. *Indium Corp. of Am. v. Semi-Alloys, Inc.*, 781 F.2d 879, 884 (Fed. Cir. 1985) ("In deciding a Rule 12(b)(1) motion, the court can consider . . . evidentiary matters outside the pleadings."). All reasonable inferences are made in plaintiffs' favor for the purposes of defendant's motion to dismiss. *Henke v. United States*, 60 F.3d 795, 797 (Fed. Cir. 1995).

[3] The filing referred to in this citation is titled "Plaintiffs' Answer to Defendant's Motion to Dismiss Pro Se Complaint." For the sake of brevity, we will refer to this document as plaintiffs' response. When the pinpoint citation is preceded by an "A," these are the page numbers handwritten by plaintiffs on the attachments to their response.

AVAILABLE FOR VIEWING DURING INSPECTION OF THE AIRCRAFT ONLY." Pls.' Resp. A034. Despite the tone of the description, plaintiffs did not inspect the airplane prior to bidding and winning the auction.

GSA's auction website also has a link called "Terms & Conditions" in which the following relevant terms are provided:

- Photographs may not depict an exact representation of the bid item(s) and should not be relied upon in place of written item descriptions or as a substitute for physical inspection.

- Bidders agree to physically inspect the property upon which they bid or thereby waive the opportunity to conduct a physical inspection. In waiving their inspection rights, bidders bear the risk for any gross omissions regarding the functionality of items, failure to cite major missing parts and/or restrictions with regards to usage that would have been revealed by physical inspection. There are times when access to property may be limited due to property being located in a restricted area. GSA will do all that it can to ensure that photos and detailed descriptions are provided in these instances.

- Contracts resulting from the sale of any offer in the GSAAuctions.gov website are subject to the Contract Disputes Act of 1978 (41 USC 7101-7109), as amended.

- Condition of property is not warranted. Deficiencies, when known, have been indicated in the property descriptions. However, absence of any indicated deficiencies does not mean that none exists. Therefore, the bidder should ascertain the condition of the item through physical inspection.

- The Government warrants to the original purchaser that the property listed in the GSAAuctions.gov website will conform to its written description. Features, characteristics, deficiencies, etc. not addressed in the description are excluded from this warranty. GSA

further cautions bidders that GSA's written description represents GSA's best effort to describe the item based on the information provided to it by the owning agency. Therefore, gross omissions regarding the functionality of items, failures to cite major missing parts and/or restrictions with regards to usage may occur.

- Claims for Misdescription

  If items have been awarded but not paid for and the successful bidder feels that the property is mis-described, he/she must follow these procedures: A written claim needs to be submitted to the **Sales Contracting Officer within 15 calendar days from the date of award** requesting release of contractual obligation for reasons satisfying that of a mis-description. No verbal contact with the custodian or the Sales Contracting Officer or any other federal official will constitute a notice of misdescription.

  When items are awarded and payment has been received, regardless of the removal status (removal may or may not have occurred), the successful bidder must submit a written notice to the Sales Contracting Officer within 15 calendar days from the date of payment email notification (the Purchaser's Receipt). If property has been removed and the claim is accepted by the Sales Contracting Officer, the purchaser must maintain the property in its purchased condition and return it at their expense to the location designated by the Sales Contracting Officer or any other federal official.

  A request for refund must be substantiated in writing to the Contracting Officer for issues regarding mis-described property, missing property and voluntary defaults within 15 calendar days from the date of award.

  The refund is limited to the purchase price of the misdescribed property.

- The Government does not warrant the merchantability of the property or its purpose. The purchaser is not entitled to any payment for loss of profit or any other money damages - special, direct, indirect, or consequential.

Def.'s Mot. to Dismiss A5-A8 (emphasis in original).

Mr. Williams traveled from his home in Florida at the end of January 2012 to take custody of the airplane, which was located in California. After accepting custody and upon inspection of the airplane, Mr. Williams discovered that it was missing essential parts. On February 1, 2012, the Williamses sent an e-mail to Shirley Tarkington, the contracting officer ("CO"), requesting a price reduction because the condition of the aircraft had been misrepresented.[4] In this e-mail, plaintiffs describe how they were surprised by the "cannibalized state of the aircraft" and when they spoke with the custodian responsible for delivering the aircraft to plaintiffs, who was also the aircraft mechanic, the custodian informed plaintiffs that "he was never asked about the overall condition of the aircraft and missing items, so he never said anything about it until now." Pls.' Resp. A032; Def.'s Mot. to Dismiss A14. Two days later, the CO responded via e-mail with the terms governing a claim of misdescription, a notation that plaintiffs' written claim was received after the 15-day period, and a statement that plaintiffs' failure to assert a timely misdescription claim meant an automatic denial. The CO, however, "agreed to refund $1,000.00 dollars as a courtesy for any inconvenience." Pls.' Resp. A033; Def.'s Mot. to Dismiss A14. Ms. Williams replied with thanks, agreement, and acknowledgment "that you didn't have to give us anything back." Def.'s Mot. to Dismiss A13. Plaintiffs, in fact, received $1,000 from GSA in February of 2012. Def.'s Mot. to Dismiss A15-A17.

When plaintiffs attempted to register the airplane, the FAA informed them on August 14, 2012, that the previous owners (USDA & the Fire Department of Kern County) had cancelled the registration on December 4, 2009, because the airplane was destroyed or scrapped. Plaintiffs claim that the government gave them a seemingly valid FAA registration after the sale when they took custody of the aircraft. *See* Pls.' Resp. A010. The Williamses subsequently sought out professionals to assess the airplane and approximate how much it would cost to make the necessary repairs. Plaintiffs received an estimate in 2012 for the replacement of missing parts, which totaled $48,230.00. Plaintiffs were also informed that the engine would need at least

---

[4] The actual wording of the plaintiffs' e-mail is "This email shall serve as my formal request for a price reduction off the purchase price of said item, on the grounds that it was misrepresented." Pls.' Resp. A032.

$30,000 of work before the aircraft would be flight-worthy. The Williamses continue to store the airplane in the condition it was received.

## DISCUSSION

The Court of Federal Claims is a court of limited jurisdiction and it "possesses only that power authorized by Constitution and statute." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 373 (1994). Plaintiffs must establish that their claim falls within the subject matter jurisdiction of this court before we may consider the merits of their claim. "While a *pro se* plaintiff is held to a less stringent standard than that of a plaintiff represented by an attorney, the *pro se* plaintiff, nevertheless, bears the burden of establishing the Court's jurisdiction by a preponderance of the evidence." *Riles v. United States*, 93 Fed. Cl. 163, 165 (2010) (internal citation omitted); *see Haines v. Kerner*, 404 U.S. 519, 520 (1972) (stating that general allegations made by a *pro se* plaintiff are held to a "less stringent standard[] than formal pleadings drafted by lawyers"); *see also Henke*, 60 F.3d at 799 ("The fact that [plaintiff] acted *pro se* in the drafting of his complaint may explain its ambiguities, but it does not excuse its failures, if such there be.").

Under the Tucker Act, we have limited jurisdiction to adjudicate "any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a)(1) (2012). Specifically, the Tucker Act provides that this court "shall have jurisdiction to render judgment upon any claim by or against, or dispute with, a contractor arising under section 7104(b)(1) of title 41 [the CDA], . . . on which a decision of the contracting officer has been issued under section 6 of that Act." 28 U.S.C. § 1491(a)(2). Essentially, this second provision permits this court to review *de novo* the CO's decision made under the procedures outlined in the CDA. *Id*; 41 U.S.C. § 7104 (2012). The key to the method of establishing jurisdiction pursuant to § 1491(a)(2) is compliance with the CDA.

The CDA requires a contractor to submit a written claim against the federal government to the CO for decision. 41 U.S.C. § 7104. A claim is defined as "a written demand or written assertion by one of the contracting parties seeking, as a matter of right, the payment of money in a sum certain, the adjustment or interpretation of contract terms, or other relief arising under or relating to the contract." 48 C.F.R. § 2.101 (2013). In sum, a claim must:

"be (1) a written demand, (2) seeking, as a matter of right, 3) the payment of money in a sum certain." *Daewoo Eng'g & Contstr. Co. v. United States*, 557 F.3d 1332, 1336 (Fed. Cir. 2009) (quotation and citation omitted). If the claim made by the contractor is for more than $100,000, the contractor must certify[5] the claim. 41 U.S.C. § 7103(b)(1). Generally, the CO has sixty days from the receipt of a claim to render a decision. 41 U.S.C. § 7103(f). If the CO does not issue a decision during that time then the lack of decision "is deemed to be a decision by the contracting officer denying the claim." 41 U.S.C. § 7103(f)(5). It is only upon receipt of the CO's final decision or after sixty days have passed and the CO's inaction qualifies as a denial that the contractor may seek review of the CO's decision in this court. 41 U.S.C. §§ 7103(f)(5), 7104(b). Thus, pursuant to the CDA, our jurisdiction over a claim "is lacking unless the contractor's claim is first presented to the contracting officer and that officer renders a final decision on the claim." *England*, 353 F.3d at 1379.

Defendant asserts that the Williamses failed to comply with the requirements of the CDA and therefore the court does not have jurisdiction over their claim.[6] In response, plaintiffs asks the court to construe their interaction with the CO, Ms. Tarkington, as a claim and final decision. Alternatively, plaintiffs argue that they were not subject to the requirements

---

[5] To certify, one must confirm formally that

> (A) the claim is made in good faith; (B) the supporting data are accurate and complete to the best of the contractor's knowledge and belief; (C) the amount requested accurately reflects the contract adjustment for which the contractor believed the Federal Government is liable; and (D) the certifier is authorized to certify the claim on behalf of the contractor.

41 U.S.C. § 7103(b)(1).

[6] Defendant initially argued that we also lack jurisdiction under the Tucker Act to hear any of plaintiffs' claims against the Kern County Fire Department, which co-owned the aircraft with the USDA. Plaintiffs' later explained that they were not asserting any claims against Kern County in this suit, but were simply including Kern County to give a complete recitation of the facts. Defendant subsequently conceded this argument, noting that plaintiffs agree that this court lacks jurisdiction over claims against Kern County, California.

of the CDA because they have an express contract with the federal government that is not for a procurement or service. We are thus presented with two issues–the first is whether plaintiffs satisfied the requirements of the CDA by presenting a claim to and receiving a final decision from the CO, and second, whether plaintiffs' contract is subject to the CDA–which we will address in turn.

First, defendant argues that plaintiffs' request for a price reduction does not satisfy the CDA requirement that a claim include a sum certain.[7] Plaintiffs do not respond directly to the government's argument that their request for a price reduction does not satisfy the requirement that a CDA claim contain a

---

[7] Defendant draws our attention to two additional ways that plaintiffs failed to comply with the requirements of the CDA. The first is that plaintiffs seek approximately $164,230 in damages through this suit but have not certified their claim. Plaintiffs argue that a defect in the certification of their claim is not fatal to the court's jurisdiction. 41 U.S.C. § 7103(b)(3) ("A defect in the certification of a claim does not deprive a court . . . of jurisdiction over the claim. Prior to the entry of a final judgment by a court . . . , the court . . . shall require a defective certification be corrected."). Plaintiffs are correct in their reading of 41 U.S.C. § 7103(b)(3) except for the fact that there is a significant difference between a defective certification and a nonexistent one. 48 C.F.R. § 33.201 (2013) ("Defective certification means a certificate which alters or otherwise deviates from the language in 33.207(c) or which is not executed by a person authorized to bind the contractor with respect to the claim. Failure to certify shall not be deemed to be a defective certification."). Failure to include any certification of a claim for over $100,000 operates as a bar to this court's jurisdiction. Scan-Tech Sec. L.P. v. United States, 46 Fed. Cl. 326, 339 (2000) ("[48 C.F.R. 33.201] effectively prevents a contractor from completely circumventing the certification requirement by asserting that its failure to certify merely constituted a defect in certification that should not deprive the court of its jurisdiction."). We need not decide whether plaintiffs' claim required certification because we hold below that plaintiffs' failed to submit a CDA claim to the CO. Additionally, defendant argues that even if the court construes the e-mail correspondence between plaintiffs and the CO as a proper claim and denial, plaintiffs did not timely appeal from the CO's February 3, 2012 decision because plaintiffs filed their case in federal court on February 5, 2013. It is not necessary for us to reach this argument because we find that plaintiffs never submitted a claim to the CO.

sum certain. Instead, plaintiffs broadly assert that they did, in fact, comply with the CDA "when they filed their certified claim in good faith to the contracting officer via email on February 1, 2012." Pls.' Resp. 1.

The purpose of the CDA requirement that a claim contain a request for a sum certain is to provide the CO with "adequate notice of the basis and amount of [the] claim." *Maropakis Carpentry, Inc. v. United States*, 609 F.3d 1323, 1328 (Fed. Cir. 2010) (holding also that the claim must put the CO on notice that the claimant seeks a final decision). Here, the CO was not provided with adequate notice of the amount and basis of plaintiffs' claim. In Ms. Williams' e-mail to the CO, she requested a reduction in the purchase price of the aircraft without mentioning any dollar amounts.[8] *See RCS Enter., Inc. v. United States*, 46 Fed. Cl. 509, 514 (2000) ("The problem is that plaintiff's claim letter failed to ask for any amount based on such a claim."). This request was insufficient under the CDA, which requires that a claim assert a right to a sum certain.

We also note that the basis and amount of plaintiffs' claim changed from their initial request to the CO to their prayer for relief in this court. While the Williamses' initially sought and received a reduction in the purchase price of the airplane, they now ask us to order GSA to pay for repairs to the airplane and their costs of transport, storage, and litigation in total amount of $164,230. Although the latter is a sum certain, it was not presented to the CO and cannot be construed to satisfy the sum certain element of a CDA claim.

Second, in their sur-response, plaintiffs raise the theory that their contract with GSA is not subject to the CDA and therefore, they did not need to obtain a CO's final decision before filing suit. The CDA applies to "any express or implied contract . . . made by an executive agency for– (1) the procurement of property, other than real property in being; (2) the procurement of services; (3) the procurement of construction, alteration, repair, or maintenance of real property; or (4) the disposal of personal property." 41 U.S.C. § 7102(a).

---

[8] Plaintiffs argue that the CO did not inform them that their claim was defective and that this somehow relieves them of the obligation to comply with the CDA. The Williamses do not identify any authority to support their assertion and we know of no legal support for their rationale.

Plaintiffs characterize their contract as a "purchase contract" rather than a procurement or a contract for services and, citing *Terry v. United States*, 98 Fed. Cl. 736 (2011), conclude that the CDA does not apply to purchase contracts. Plaintiffs, however, misread the court's holding in *Terry*. After discussing the four types of contracts covered by the CDA, the court in *Terry* concludes that

> A concession contract does not fall within these categories. *See* 31 C.F.R. § 51.3 (2008) ("Concession contracts are not contracts within the meaning of [the] Contract Disputes Act[] and are not service or procurement contracts within the meaning of statutes, regulations, or policies that apply only to federal service contracts or other types of federal procurement actions.").

98 Fed. Cl. at 737. While plaintiffs would have us read "purchase contract" where the *Terry* court refers to "concession contracts," this passage actually articulates that while concession contracts are exempt from the CDA, contracts for the disposal of personal property, or "purchase contracts," are squarely subject to the CDA's administrative requirements.

Defendant argues that each of the cases that plaintiffs cite[9] represent a carve out in the law that applies only to concession contracts. Simply put, defendant asserts that while plaintiffs have identified an exemption from the CDA for contracts to provide concession, plaintiffs' contract does not fit within this exemption. We agree. Plaintiffs' contract is for the purchase of personal property that the government had purposed for disposal. The CDA expressly includes this type of contract within its reach. 41 U.S.C. § 7102(a)(4) ("[The CDA] applies to any express or implied contract . . . made by an executive agency for– . . . (4) the disposal of personal property.").

---

[9] *Pacrim Pizza Co. v. Pirie*, 304 F.3d 1291, 1293-94 (Fed. Cir. 2002) (concluding that a contract to provide fast food services at a Marine Corps air station was not covered by the CDA); *Coffee Connections, Inc. v. United States*, 113 Fed. Cl. 741, 751 (2013) ("Though contract claims are generally subject to the CDA, the CDA does not apply to concession contracts."); *Terry*, 98 Fed Cl. at 737 (holding that concession contracts are exempt from the CDA). Plaintiffs also point to *SUFI Network Services, Inc. v. United States*, 102 Fed. Cl. 656 (2012), which is not relevant to this case because the applicability of the CDA was not at issue.

CONCLUSION

The Williamses' contract is governed by the CDA, which requires that a contractor first submit a claim to the CO before filing suit in the Court of Federal Claims. The claim must be for a sum certain, and if for an amount over $100,000, must be certified. Without a final decision from the CO, this court lacks jurisdiction to consider claims based on a contract for the disposition of personal property. We therefore grant defendant's motion and dismiss plaintiffs' complaint, without prejudice,[10] for lack of subject matter jurisdiction. The Clerk is directed to enter judgment. No costs.

_____
ERIC G. BRUGGINK
Judge

---

[10] The CDA provides that "[e]ach claim by a contractor against the Federal Government relating to a contract . . . shall be submitted within 6 years after the accrual of a claim." 41 U.S.C. § 7103(a)(4)(A). If plaintiffs elect to file a claim with the CO, receive a decision or a deemed denial, and then decide to challenge the CO's decision in the Court of Federal Claims, the filing fee shall be waived.